UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.F.,<br><br>          Plaintiff,<br><br>     v.<br><br>ANDREW SAUL,<br><br>          Defendant. | Case No.  20-cv-04708-SVK<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 23 |

Plaintiff appeals from the final decision of the Commissioner of Social Security, which denied Plaintiff's application for disability benefits. The Parties have consented to the jurisdiction of a magistrate judge. Dkt. 7, 10. For the reasons discussed below, the Court **GRANTS** Plaintiff's motion for summary judgment (Dkt. 19) and **DENIES** Defendant Commissioner's cross-motion for summary judgment (Dkt. 23).

**I.     BACKGROUND**

In June 2016, Plaintiff filed an application for Title II disability insurance benefits. *See* Dkt. 16 (Administrative Record ("AR")) 195-96. After a hearing, an Administrative Law Judge ("ALJ") issued a decision on April 18, 2019, finding that Plaintiff was not disabled. AR 7-25 (the "ALJ Decision"). The ALJ concluded that Plaintiff suffered from the following severe impairments: degenerative disc disease; history of trachelectomy, hysterectomy, oophorectomy and mesh placement; and Tarlov cysts. AR 12. The ALJ also found that Plaintiff had a medically determinable mental impairment of depression, but it was not severe. *Id.* The ALJ then determined that Plaintiff's residual functional capacity ("RFC") limited her to light work with additional limitations. AR 14. The ALJ concluded that Plaintiff was not disabled because she was capable of performing her past relevant work as a front desk receptionist. AR 18.

After the Appeals Council denied review, Plaintiff filed this action challenging the ALJ Decision. Dkt. 1 (Complaint).

In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment (Dkt. 19, 23), which are now ready for decision without oral argument.

## II. ISSUES FOR REVIEW

1. Is the ALJ's finding that Plaintiff could perform her past relevant work supported by substantial evidence?
2. Did the ALJ properly evaluate the medical evidence?
3. Did the ALJ properly evaluate Plaintiff's credibility?
4. Did the ALJ properly evaluate lay witness testimony?

## III. STANDARD OF REVIEW

This Court is authorized to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id*. at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin*., 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id*.

1    Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is
2 harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent
3 findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and
4 is instead "constrained to review the reasons the ALJ asserts." *Id*. (internal quotation marks and
5 citation omitted).

## IV.    DISCUSSION

### A.    Issue One:  Finding re Past Relevant Work

At step four of the disability determination, the ALJ must evaluate whether, given the claimant's RFC (*i.e.,* what a claimant can still do despite her limitations), the claimant can still do her past relevant work. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 and n.5 (9th Cir. 2014). "At step four, a claimant has the burden to prove that [she] cannot perform [her] past relevant work either as actually performed or as generally performed in the national economy." *Stacy v. Colvin,* 825 F.3d 563, 569 (9th Cir. 2016) (internal quotation marks and citation omitted).

At the hearing, a vocational expert (VE) testified about Plaintiff's ability to perform her past relevant work as a front desk receptionist. AR 71-82. The VE testified that Plaintiff's past work as a front desk receptionist had an exertional level of sedentary (as generally performed) or light (as actually performed). AR 72; *see also* AR 18.

In his decision, the ALJ found that Plaintiff has the RFC:

> to perform light work as defined in 20 CFR 414.1567(b) except the claimant could lift and carry up [to] ten pounds maximum and occasionally stoop and climb. In addition, the claimant must have been able to change position from sitting, standing or walking every hour.

AR 14. In evaluating whether Plaintiff could perform her past relevant work as a front desk receptionist, the ALJ explained that:

> [i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant was able to perform it as generally (but not actually) performed. In response to a question from me that accurately reflected the above residual functional capacity and in accordance with the DOT, the vocational expert compared the requirements of front desk receptionist to the claimant's restrictions and found that the claimant is capable of the job of front desk receptionist as generally (but not actually) performed.

3

AR 18-19. The ALJ concurred with the VE on this point. AR 19.

Plaintiff argues that in finding that she could return to her past relevant work as a front desk receptionist as generally performed, the ALJ misconstrued the VE's testimony. Pl. MSJ (Dkt. 19-1) at 8. According to Plaintiff, the VE testified that the need to change positions every hour would eliminate Plaintiff's ability to perform her past work as a front desk receptionist. *Id.* at 8-9.

Based on a review of the hearing transcript, the Court concludes that the VE's testimony was not as the ALJ characterized it, or at a minimum was ambiguous. The ALJ posited a hypothetical question concerning an individual with the above-described RFC, including the need to change positions from sitting, standing, or walking every hour. AR 73. The ALJ then asked:

> Q: Can this person can perform the claimant's past work?
>
> A: Neither as performed as discussed in the DOT … In order to change position every hour, in any of these jobs, there would be an accommodation by the employer … They couldn't of their own free will change positions.
>
> Q: Okay. So, neither job can be performed.

AR 74. However, later in the hearing the VE offered further testimony on this issue:

> Q: … [W]here a person is limited to carrying 10 pounds and must be able to change positions from sitting, standing, or walking every hour, can that person perform the front desk receptionist job as generally performed or actually performed?
>
> A: One of the problems that comes in, your honor, is that different offices have reception duties a different way. Some offices pro forma will provide the receptionist with a headset, more often than not. And you can do that standing --
>
> Q: Okay. And that's not an accommodation. Okay. And do that from switching from standing to sitting.
>
> A: That's correct.
>
> Q: Okay. So, that job would be available in response to hypo number two, lifting and carrying 10 pounds, --
>
> A: Yes.

4

Q:  -- occasionally stoop and climb --

A:  The way it's performed in the national economy.

AR 79.  The Commissioner argues that this later testimony "clarified" that Plaintiff's past work, "the way it's performed in the national economy," would be available, which supports the ALJ's conclusion that Plaintiff was able to perform her past work as "generally (but not actually) performed."  Def. MSJ at 9.

The Court finds the VE's testimony to vague and ambiguous to support the ALJ's conclusion that Plaintiff was capable of performing her past relevant work.  Accordingly, on this issue, the Court grants Plaintiff's motion for summary judgment and denies the Commissioner's motion.

**B.     Issue Two:  Evaluation of Medical Evidence**

Plaintiff challenges the ALJ's weighing of the medical evidence, specifically his decision to give "partial weight" to the medical opinion of Plaintiff's treating physician, James C. Gardner, M.D.  Pl. MSJ at 9-11; *see also* AR 16.  Dr. Gardner opined that Plaintiff occasionally walks with a cane, cannot carry over ten pounds, and must alternate between sitting, standing, and walking each hour.  AR 1366.  The ALJ found this aspect of Dr. Gardner's opinion consistent with Plaintiff's lumbar degenerative disc disease and Tarlov cysts.  AR 16.  However, the ALJ did not credit Dr. Gardner's opinion that Plaintiff must unexpectedly lie flat or urgently use the bathroom.  AR 16; AR 1366.[1]  The ALJ explained that "there is no report or complaint in the medical record that the claimant must lie flat unexpectedly or use the bathroom urgently."  AR 16.  Plaintiff argues that "[c]ontrary to the ALJ's assertions, Tarlov Cysts, which the ALJ found to be a severe impairment at step two …, can cause a need to lie flat and in bowel and bladder urgency and incontinence episodes, just as Dr. Gardner noted."  Pl. MSJ at 10.

Under the regulations that apply in this case, the "treating physician rule" requires that the opinion of a treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-

---

[1] The ALJ also did not credit Dr. Gardner's opinion that Plaintiff suffers from occasional depression.  AR 16.  Plaintiff does not challenge that aspect of the ALJ's decision.

examining physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). Where a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it must be given controlling weight. 20 C.F.R. § 404.1527(c)(2). The ALJ is required to provide clear and convincing reasons, supported by substantial evidence, for rejecting the uncontradicted opinion of treating physicians. *Ghanim*, 763 F.3d at 1160; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (holding that ALJ can reject uncontradicted treating physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his own interpretation thereof, and making findings") (internal quotation marks and citation omitted). Where contradicted, the opinion of treating physicians may be rejected only for "specific and legitimate reasons that are supported by substantial evidence." *Ghanim*, 763 F.3d at 1160.

In support of her argument that the ALJ improperly discounted portions of Dr. Gardner's opinion, Plaintiff quotes a list of symptoms that "may be present in patients that have symptomatic Tarlov cysts" that appears on the website of the American Association of Neurological Surgeons. Pl. MSJ 11. These potential symptoms include difficulty in sitting for prolonged periods and changes in bowel and bladder function, including urinary incontinence. *Id*. However, this generic list of symptoms that individuals with Tarlov cysts "may" have is not evidence that Plaintiff in fact had such symptoms. *See Montes v. Astrue,* No. CV 08-6668 CW, 2009 WL 3672551, at *4 (C.D. Cal. Nov. 2, 2009).

The other evidence cited by Plaintiff is Dr. Gardner's Physician Certification signed in March 2018. Pl. MSJ at 10 (citing AR 1366). As discussed above, in that certification, Dr. Gardner identified the following limitations on Plaintiff's activities of daily living:

> Unexpectedly must lie flat, urgent bathroom needs, gets help from family and has household assists, carts, reachers, etc.

AR 1366. The ALJ stated that limitations related to lying flat or bathroom use "are not justified by the evidence," noting that:

> there is no report or complaint in the medical record that the claimant must lie flat unexpectedly or use the bathroom urgently, and I have already noted the claimant's wide range of independent ADLs …

AR 16; *see also* AR 15 ("no such complaints [of urinary and bowel incontinence] are noted in examination notes").  Moreover, the ALJ also noted that "neither [Plaintiff's] daughter or her husband noted incontinence issues in their third-party function reports."  AR 15.

Contrary to the ALJ's characterization of the medical record regarding Plaintiff's incontinence, evidence in the record shows that in April 2015, Plaintiff was assessed to have stress incontinence and was referred to physical therapy, with one treatment goal being to "[i]ncrease pelvic floor muscle strength ½-1 grade to facilitate urge suppression and/or to decrease stress incontinence episodes by 50 percent within 12 Week(s)."  AR 507, AR 518.  Later medical records also refer to incontinence issues.  *See, e,g.,* AR 521, 523, 605, 1014, 1075.  The ALJ did not address these medical record in his decision.  Although the Commissioner now relies on other portions of the medical record to argue that "[e]ven where incontinence complaints were addressed in the medical evidence, examinations and testing show no results that support a finding that Plaintiff had significant incontinence issues" (Def. MSJ at 16), in this proceeding the Court is limited to evaluating the ALJ's reasons for his conclusions.  *Brown-Hunter*, 806 F.3d at 492.

Here, the Court finds that the ALJ's decision to give Dr. Gardner's opinion only partial weight is not supported by substantial evidence because one of the main reasons offered by the ALJ—the alleged lack of medical record evidence regarding Plaintiff's incontinence issues—ignores portions of the medical record.  Accordingly, on this issue, the Court grants Plaintiff's motion for summary judgment and denies the Commissioner's motion.

### C. Issue Three:  Evaluation of Plaintiff's Credibility

Where, as here, the ALJ made no finding of malingering, a reviewing court must determine whether the ALJ identified specific, clear and convincing reasons for his conclusion regarding Plaintiff's credibility.  *Brown-Hunter v. Colvin,* 806 F.3d 487, 488-89 (9th Cir. 2015).  "This requires the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and … explain what evidence undermines that testimony."  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (internal quotation marks and citations omitted).

1    Plaintiff testified that she had episodic urinary and bowel incontinence. AR 52-57.
2    However, the ALJ found that "no such complaints are noted in examination notes." AR 15. He
3    also cited the absence of references to incontinence in third-party function reports prepared by
4    Plaintiff's husband and daughter. *Id.*; *see also* AR 393-401, AR 413-420. Plaintiff challenges the
5    ALJ's assessment, citing evidence in the record where Plaintiff complained of urinary and bowel
6    incontinence. Pl. MSJ at 12-13 and evidence cited therein. Plaintiff also cites progress notes in
7    her medical record that note urinary incontinence. Pl. MSJ at 13-14 and evidence cited therein.

It is evident from the ALJ's decision that a critical portion of his credibility determination was tied to his evaluation of the medical evidence (*see, e.g.,* AR 15), which the Court has concluded was erroneous. Accordingly, on this issue, the Court grants Plaintiff's motion for summary judgment and denies the Commissioner's motion.

### D. Issue Four: Evaluation of Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Tobeler v. Colvin*, 749 F.3d 830, 832 (9th Cir. 2014). (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). "[L]ay witness testimony is 'incompetent' when it consists of a medical diagnosis, because 'medical diagnoses are beyond the competence of lay witnesses' to make." *Tobeler*, 749 F.3d at 833 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). But "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment." *Id*. (citations and internal quotation marks omitted).

Plaintiff challenges the ALJ's decision to give "limited weight" to third-party function statements prepared by Plaintiff's husband and daughter. AR 16-17. The ALJ summarized these function reports and noted that "[w]ith regard to the claimant's impairments, the opinions of [the daughter] and [the husband] are important evidence to consider." AR 17. However, the ALJ gave "limited weight" to the third-party reports due to "the lack of corroborating documentation and the status of [the daughter] and [the husband] as non-medical sources." AR 17-18.

8

The ALJ's comment that Plaintiff's relatives are "non-medical sources" is problematic given that as lay witnesses, those individuals may base their testimony on their observations, rather than medical expertise. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). The ALJ's other reason for discounting the lay witness testimony—the lack of corroborating documentation—is insufficient in the context of this case. The lay witnesses offered information about Plaintiff's limitations, including limitations on her ability to sit upright for long periods without pain. *See, e.g,* AR 393, 418. The ALJ's RFC determination included several limitations on Plaintiff's ability to perform light work, including a requirement that Plaintiff be able to change position every hour. AR 14. Accordingly, it appears that the ALJ gave some weight to the lay witness testimony. But the ALJ fails to specify which of that testimony he credited and which he found lacked corroborating documentation. Moreover, the third party testimony was at least in some respects consistent with Dr. Gardner's opinion which, as discussed above, the ALJ erred in evaluating.

Accordingly, on this issue, the Court grants Plaintiff's motion for summary judgment and denies the Commissioner's motion.

## V.     CONCLUSION AND DISPOSITION

The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin,* 759 F.3d 995, 1019 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted).

Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. On remand, the ALJ

must properly evaluate the issues discussed above based on applicable law and the guidance provided in this opinion. It is not the Court's intent to limit the scope of the remand.

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment, **DENIES** Defendant's cross-motion for summary judgment, and **REMANDS** this case for further proceedings.

**SO ORDERED.**

Dated: January 3, 2022

SUSAN VAN KEULEN
United States Magistrate Judge